UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| AIG SPECIALTY INSURANCE COMPANY, f/k/a/ CHARTIS SPECIALTY INSURANCE COMPANY, f/k/a/ AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>PHOENICIAN LLC and EVEREST INDEMNITY INSURANCE COMPANY,<br><br>Defendants. | CIV. NO. 2:13-2578 WBS CKD<br><br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

----oo0oo----

Plaintiff AIG Specialty Insurance Company brought this action against defendants Phoenician LLC ("Phoenician") and Everest Indemnity Insurance Company ("Everest"). Presently before the court is Everest's motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).

1

I.      Allegations of the First Amended Complaint

In 2001, Phoenician began developing a fifteen-unit apartment complex in Roseville, California known as "The Phoenician." (First Am. Compl. ¶ 4 (Docket No. 11).) The apartments were later converted to condominiums. (Id.) Phoenician took out two insurance policies on the property, a primary policy from Everest and an excess policy from plaintiff. (Id. ¶ 7.) Plaintiff's policy was subject to a $2 million retained limit per occurrence. (Id.)

Severe rainfall damaged several of the property's units in October 2009. (Id. ¶ 13.) The Phoenician Homeowner Association ("Association") tendered a claim to its insurer, which denied coverage on the grounds that design and construction defects caused the damage. (Id.) The Association contacted Phoenician, which tendered a claim to Everest under its primary policy. (Id.) Everest retained counsel to represent the matter. (Id.) Thereafter, the Association hired a consultant who conducted an investigation of the Phoenician property. (Id. at 14.) The consultant discovered further construction defects, and to evaluate these issues, it conducted destructive testing on the property between 2010 and 2012. (Id.) Plaintiff contends that during this time, the Association informed Phoenician and Everest about the destructive testing, but they declined to participate. (Id.)

In September 2012, the Association provided notice to Phoenician, pursuant to California's "Right to Repair Act," that it planned to commence litigation regarding alleged construction defects at The Phoenician. (Id. ¶ 15.) Plaintiff contends that,

2

1 | by failing to acknowledge the claim in writing within fourteen
2 | days after receipt, both Phoenician and Everest waived
3 | Phoenician's right to avail itself of defenses and pre-litigation
4 | remedies available under the Act.  (Id. ¶ 16.)  Having failed to
5 | resolve the issues, on October 10, 2012, the Association filed a
6 | lawsuit against Phoenician in Placer County Superior Court.  (Id.
7 | ¶ 17.)  Arbitration of the Association's claims was set for
8 | January 2014.  (Id. ¶ 26.)
9 |      Plaintiff alleges that neither Phoenician nor Everest
10 | advised it of the destructive testing, the Association's "Right
11 | to Repair" notice, or the underlying lawsuit the Association
12 | brought against Phoenician.  (Id. ¶ 18.)  Plaintiff further
13 | alleges that it did not become aware of the underlying lawsuit
14 | between the Association and Phoenician until late 2012, through a
15 | communication from the Association's counsel.  (Id. ¶ 19.)
16 | Plaintiff contacted Everest and Klinedinst for Phoenician's
17 | contact information and was allegedly misinformed by Everest that
18 | Phoenician was defunct.  (Id. ¶ 20.)  Plaintiff's independent
19 | investigation of the Secretary of State's corporation database
20 | corroborated this information.  (Id. ¶ 21.)  However, plaintiff
21 | later learned in October 2013 that Phoenician was not defunct and
22 | had been in contact with Everest, Klinedinst, and the Association
23 | during the period leading up to the lawsuit.  (Id. ¶¶ 24-25.)
24 | Plaintiff now alleges that by the time of this discovery, it was
25 | unable to participate meaningfully in the arbitration process.
26 | (Id. ¶¶ 25-26, 46.)  The arbitrator nevertheless denied plaintiff
27 | counsel's motion to continue the proceedings.  (Id. ¶ 26.)
28 |      As a result of its late discovery of Phoenician's

status as an existing entity and the Association's action against Phoenician, plaintiff now contends that it lacked adequate time to investigate and discover facts directly relevant to its defense. (Id. ¶ 25.) It also asserts its confusion over Phoenician's status prevented it from contacting other parties and insurers that might have contributed toward the settlement amount. (Id. ¶ 46.)

Prior to the date set for arbitration, the Association tendered a demand for settlement to Phoenician's counsel, who in turn forwarded the correspondence to plaintiff and Everest. (Id. ¶ 27.) The Association gave the parties two options. "Option A" proposed a full settlement involving all three parties. (Id. ¶ 28.) Everest would pay the remaining limits of its policy--approximately $1.8 million--in addition to a payment of $200,000 by Phoenician, which would ostensibly trigger plaintiff's excess coverage. (Id. ¶ 28.) "Option B" was a partial settlement, proposing that Phoenician would sign a release from liability with Everest in exchange for Everest's $1.8 million payment. (Id. ¶ 29.)

Plaintiff contends both of these options disregarded its available defenses and erroneously presumed that the $2 million combined disbursements from Phoenician and Everest would trigger its excess policy. (Id. ¶ 30.) It declined to participate in the proposed settlement on the basis that most of the defects fell outside the scope of the coverage of its issued policy; that, in the alternative, the defects were overvalued by the Association and actually fell below the policy's retained limit; and that the defects belonged to multiple occurrences such

4

that no single "occurrence" exceeded the $2 million retained limit. (Id. ¶¶ 32-36.)

On December 12, 2013, plaintiff filed its Complaint for declaratory relief, seeking a declaration that it had no duty to defend or indemnify Phoenician in connection with certain claims brought by the Association and that the partial settlement executed by Everest did not reduce or exhaust the retained limit of its excess insurance policy. (Compl. (Docket No. 1).)

Despite plaintiff's protests, Everest and Phoenician moved forward with "Option B" and entered into two separate partial settlements with the Association for $1,776,368.87 and $230,000, respectively. (First Am. Compl. ¶¶ 38-39.) Plaintiff nevertheless agreed to assume Phoenician's defense subject to a reservation of rights to seek reimbursement. Plaintiff, Phoenician, and the Association reached a conditional joint resolution one week prior to the January arbitration date. (Id. ¶ 42.)

II. Procedural Background

Plaintiff filed its First Amended Complaint ("FAC") on March 28, 2014, asserting claims for cost recovery against Phoenician and Everest.[1] Default judgment was entered against Phoenician for having failed to appear or answer plaintiff's Complaint within the time allowed by law. (Clerk's Entry of Default (Docket No. 21).) Against Everest, plaintiff seeks reimbursement for sums it paid in the defense of Phoenician and the January 2014 settlement with the Association. Plaintiff

---

[1] Plaintiff's FAC does not state legal theories for such recovery.

5

argues those sums were attributable to negligence and breach of duty by Everest in the defense and settlement of the Association's underlying claim. (Id. ¶ 54.) Everest now moves to dismiss plaintiff's First Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). (Def.'s Mot. to Dismiss (Docket No. 28).)

III. Analysis

    A. Legal Standard

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and "where a complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–57).

When ruling on a motion to dismiss, a court may generally not consider materials other than the facts alleged in the plaintiff's complaint. See Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996). Both plaintiff and Everest attached voluminous exhibits to their briefings. (See Docket Nos. 34,

37.)  Constrained by Rule 12(b)(6), in ruling on Everest's motion, the court intends only to rely on plaintiff's FAC.

### B. Plaintiff's Theories for Recovery

#### 1. Equitable Subrogation

"In the insurance context, [equitable subrogation] permits the paying insurer to be placed in the shoes of the insured and to pursue recovery from third parties responsible to the insured for the loss for which the insurer was liable and paid." Fireman's Funds Ins. Co. v. Maryland Casualty Co., 21 Cal. App. 4th 1586, 1596 (4th Dist. 1994). There are six elements essential to an equitable subrogation claim:

> (1) the insured has suffered a loss for which the party to be charged is liable, either because the latter is a wrongdoer whose act or omission caused the loss or because he is legally responsible to the insured for the loss caused by the wrongdoer; (2) the insurer, in whole or in part, has compensated the insured for the same loss for which the party to be charged is liable; (3) the insured has an existing, assignable cause of action against the party to be charged, which action the insured could have asserted for his own benefit had he not been compensated for his loss by the insurer; (4) the insurer has suffered damages caused by the act or omission upon which the liability of the party to be charged depends; (5) justice requires that the loss should be entirely shifted from the insurer to the party to be charged . . . ; and (6) the insurer's damages are in a stated sum, usually the amount it has paid to its insured, assuming the payment was not voluntary and was reasonable.

Id. (quoting Troost v. Estate of DeBoer, 155 Cal. App. 3d 289, 294 (4th Dist. 1984)).

As it presently stands, plaintiff's FAC does not plausibly support the inference that Phoenician has an existing

assignable cause of action against Everest, the third element of an equitable subrogation claim. According to the FAC, the Association delivered written notice to Phoenician of its intent to commence litigation under California's "Right to Repair" Act. (First Am. Compl. ¶ 16.)  Plaintiff alleges that neither Phoenician nor Everest acknowledged notice of the Association's filing within fourteen days after receipt and "[a]s a result, Phoenician and Everest--without notifying or consulting AIG Specialty--waived Phoenician's right to avail itself of defenses and remedies to which it was entitled under the Act." (Id.)

California's Right to Repair Act requires that homeowners serve notice on building owners before commencing litigation. See Cal. Civ. Code § 910.  The Act gives builders the opportunity to receive notice and cure a defect in order to resolve the matter in a nonadversarial manner. See McCaffrey Grp., Inc. v. Superior Court, 224 Cal. App. 4th 1330, 1350 (4th Dist. 2014).  It is unclear how Everest, Phoenician's insurer, could have waived Phoenician's ability to proceed under the Act. According to plaintiff, Phoenician failed to respond to the Homeowner's notice and waived its own right.  These facts thus fail to give rise to a discernible cause of action by Phoenician against Everest.

Additionally, plaintiff alleges Everest made no serious attempt to contact Phoenician or to secure the cooperation of the company's managing member or agent. (Id. ¶ 18.)  But plaintiff also states that "Phoenician took no active role at all in the defense of the Association's claims" and "did little or nothing to monitor, direct, or participate in the defense that was being

8

1  provided by Everest; and it provided no meaningful assistance to
2  Klinedinst, or to other defense counsel Everest appointed."
3  (Id.)  If Phoenician made it itself unavailable to Everest, then
4  it is not apparent it would have an "existing, assignable cause
5  of action" against Everest for failing to involve it.  See
6  Fireman's Funds Ins., 21 Cal. App. 4th at 1596.
7           Plaintiff's FAC fails to allege a plausible assignable
8  cause of action between Phoenician and Everest.  Therefore,
9  plaintiff has failed to sufficiently plead a claim for equitable
10 subrogation.  See Twombly, 550 U.S. at 570.
11                2. Duty of Good Faith and Fair Dealing
12           Because of an insurer's contractual relationship with
13 the insured, the insurer owes the insured an implied duty of good
14 faith and fair dealing that is part of any contract.  See
15 Commercial Union Assurance Cos. v. Safeway Stores, Inc., 164 Cal.
16 Rptr 709, 711 (1980).  An excess and primary insurer share no
17 such relationship.  See id. at 1041.  In Transit Casualty Co. v.
18 Spink Corp., 94 Cal. App. 3d 124 (3d. Dist. 1979), a California
19 Court of Appeal recognized a duty of good faith and fair dealing
20 between primary and excess insurers untethered to any contractual
21 relationship.  Id. at 131.  Spink, however, was effectively
22 overruled less than a year later by the California Supreme Court,
23 which held an excess insurer's cause of action against a primary
24 insurer for refusal to settle is limited to a claim for equitable
25 subrogation.  See Commercial Union, 164 Cal. Rptr. at 712; Spink,
26 94 Cal. App. 3d at 131.  Everest and plaintiff did not enter into
27 a contract with each other, and thus the covenant of good and
28 fair dealing does not apply to their dispute.  See Commercial

Union, 164 Cal. Rptr. at 712.

### 3. Collusive Settlement

Plaintiff's claim against Everest based on a theory of "collusive settlement" is essentially an extension of its direct-duty theory. Plaintiff advances its "collusive settlement" theory in reliance on Kaiser Foundation Hospitals v. North Star Reinsurance Corp., 90 Cal. App. 3d 786, (2d Dist. 1979). In Kaiser, the insured colluded with its primary insurer by assigning dates of loss on malpractice claims to the wrong policy years in an attempt to trigger the excess insurer's coverage. Id. at 789. This strategy placed the excess insurer "at the mercy of the insured and primary carrier." Id. at 792. The California Court of Appeal noted that both Kaiser and the primary insurer owed a duty of good faith and fair dealing to the excess insurer. Id. at 792.

However, the court in Kaiser went on to qualify this conclusion, noting that "while we have held that the parties' relationships are governed by the implied covenant of good faith and fair dealing rather than by unilateral fiats of [the insured and the primary insurer], we make no attempt to define precisely what rights and duties that entails in a case such as this." Id. at 794. The Kaiser court's recognition of a duty between the primary and excess insurer was also later dismissed as dictum by the Court of Appeal in Fireman's Fund, because the only parties to the appeal in Kaiser were the insured and the excess insurer. Fireman's Fund, 21 Cal. App. 4th at 1602. The opinion's language regarding duties mutually owed between insurers was unnecessary to the ruling. See id.

10

Kaiser thus does not assist plaintiff any more than Spink. Any recognition by the Kaiser court of an extra-contractual duty between the primary and excess insurers was dictum later called into question by Commerical Union and Fireman's. See Commercial Union, 164 Cal. Rptr. at 712; Fireman's Fund, 21 Cal. App. 4th at 1602.

### 4. Negligent Undertaking

As a general rule, one has no duty to aid another. See Williams v. California, 192 Cal. Rptr. 233, 235 (1983). Under certain circumstances, one has liability to third persons for physical harm caused when one negligently performs an undertaking to another. Restatement (Second) of Torts § 324A. California has adopted the negligent undertaking or "Good Samaritan" rule from the Restatement (Second). Artiglio v. Corning Inc., 76 Cal. Rptr. 479, 483 (1998). "[I]t is settled law that one who, having no initial duty to do so, undertakes to come to the aid of another . . . has a duty to exercise care in performance and is liable if (a) his failure to exercise care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." Id. (quoting Williams, 192 Cal. Rptr. at 235-36) (internal quotation marks omitted).

Recovery on a negligent undertaking theory "requires proof of each of the well-known elements of any negligence cause of action, viz., duty, breach of duty, proximate cause, and damages." Artiglio, 76 Cal. Rptr. at 479. The actor's actual assumption of an undertaking provides a basis for finding that a duty to perform existed between the actor and third party. Id. A negligence claim on this theory requires a showing that

>   (1) the actor undertook, gratuitously or for consideration, to render services to another; (2) the services rendered were of a kind the actor should have recognized as necessary for the protection of third persons; (3) the actor failed to exercise reasonable care in the performance of the undertaking; (4) the actor's failure to exercise reasonable care resulted in physical harm to the third persons; and (5) *either* (a) the actor's carelessness increased the risk of such harm, or (b) the actor undertook to perform a duty that the other owed to the third persons, or (c) the harm was suffered because either the other or the third persons relied on the actor's undertaking.

Paz v. California, 93 Cal. Rptr. 2d 703, 709 (2000). Whether an actor's alleged actions, if proven, would constitute an undertaking is generally a question of law. Artiglio, 76 Cal. Rptr. 2d at 484. However, in some cases there may be factual questions depending on the nature and extent of the act undertaken. Id.

Plaintiff's FAC does not plausibly support an inference that Everest specifically undertook performance of a service to it that Everest should have recognized was necessary for plaintiff's protection. Plaintiff alleges Everest incorrectly advised it that Phoenician was defunct and that its last known point of contact was through an individual named Larry John. (First Am. Compl. ¶ 20.) Merely "advising" Phoenician, whether or not Everest was aware the information was incorrect, did not amount to an undertaking of a service for the protection of plaintiff. Everest never "held itself out as undertaking an obligation" to ensure the information it provided was accurate. See Rappenecker v. United States, 509 F. Supp. 1018, 1021 (N.D.

12

1  Cal. 1981) (concluding the government never held itself out to
2  give warnings as part of its long-range radio navigations service
3  in such a way as to constitute an undertaking).  To that end,
4  Everest's actions did not constitute an undertaking sufficiently
5  within the meaning of section 324A.  See Artiglio, 18 Cal. 4th at
6  615.
7       Additionally, only a minority of courts have extended
8  the negligent undertaking basis for tort liability to disputes
9  involving only economic harm, and California does not appear to
10 be one of them.  See Felton v. Schaeffer, 229 Cal. App. 3d 229,
11 238 (4th Dist. 1991) (concluding that because plaintiff's claim
12 did not involve physical damage it was outside the ambit of
13 negligent undertaking).  "Courts in a large number of
14 jurisdictions have read the references to 'physical harm' in §
15 323 and § 324A of the Restatement as affirmatively precluding
16 recovery for economic losses in such cases," while a smaller
17 number of courts have held that pure economic losses are
18 recoverable in such cases.  Shaefer v. Indymac Mortg. Servs., 731
19 F.3d 98, 104-05 (1st Cir. 2013); see also Love v. United States,
20 915 F.2d 1242, 1248 (9th Cir. 1989) (interpreting Montana tort
21 law but noting that "'good samaritan' cases have typically arisen
22 where the negligently performed service is related to safety" and
23 emphasizing that under the Restatement the tortfeasor is subject
24 to the other for physical harm resulting from his failure to
25 exercise reasonable care); Shaner v. United States, 976 F.2d 990,
26 994 (6th Cir. 1992) ("Recovery under the Good Samaritan Doctrine
27
28

is limited to physical harm.").[2]

Plaintiff fails to allege that Everest undertook a service for its protection.  Even if the FAC contained such allegations, plaintiff would not have a claim for pure economic harm under California law. Therefore, plaintiff's claim based on a theory of negligent undertaking must fail.

### 5. Negligent Misrepresentation

To state a claim for negligent misrepresentation, a plaintiff must allege: (1) a misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1201 n.2 (9th Cir. 2001); Apollo

---

[2] Neither of the cases plaintiff cites in its Opposition in support of extending section 324A to economic harm are helpful, as they both involved personal injury. (See Pl.'s Opp'n at 32 n.23) FNS Mortgage Service Corp. v. Pacific General Group, Inc., 24 Cal. App. 4th 1564 (3d Dist. 1994), involved physical harm to consumers due to defective pipes and Hanberry v. Hearts Corp., 276 Cal. App. 2d 680 (4th Dist 1969), was a slip-and-fall case.  In Cooper v. State Farm, 177 Cal. App. 876 (4th Dist. 2009), a case involving economic harm, the Court of Appeal suggested the plaintiff could proceed on either a contract or negligent undertaking theory against a defendant insurer that destroyed evidence despite an express promise to retain it. However, Cooper was not a straightforward application of section 324A.  The duty the Court of Appeal identified arose from the defendant's express promise to the plaintiff to preserve evidence and the plaintiff's reliance thereon. Id. at 884.
  Additionally, in its Surreply, plaintiff cites J'Aire Corp v. Gregory, 157 Cal. Rptr. 407, 410 (1979) for the proposition that economic harm standing alone is recoverable where the parties share a special relationship. (See Pl.'s Surreply at 11:15 n.11.)  This authority is inapposite, because plaintiff's FAC fails to support a plausible inference that Everest and plaintiff shared a special relationship.

14

Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 243 (2d Dist. 2007).

Plaintiff alleges Everest represented that Phoenician was defunct and that its last known point of contact was through Larry John who no longer associated with the company. (First Am. Compl. ¶ 20.) These allegations are insufficient to support a plausible inference that the person plaintiff spoke to at Everest lacked a reasonable ground for believing this information to be true or intended to induce plaintiff's reliance--the second and third elements of a claim for negligent misrepresentation. Facts that are "merely consistent" with a defendant's liability are insufficient to allege a plausible claim for relief. See Iqbal, 556 U.S. at 678 (2009).[3]

IT IS THEREFORE ORDERED that Everest's motion to dismiss be, and the same hereby is, GRANTED.

Plaintiff has twenty days from the date this Order is signed to file an amended complaint, if it can do so consistent with this Order.

Dated: September 24, 2014

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[3] In its Opposition, plaintiff raises new allegations in support of this claim. (See Pl.'s Opp'n at 5:23-6:8, 7:5-10.) The court will not consider those new allegations as they were absent from the FAC. See Anderson, 86 F.3d at 934.